REQUESTED BY: Senator Jim Jones, Nebraska Legislature
You have requested our opinion on the constitutionality of the provision in LB 271, as recently amended by AM2313, setting out the manner in which motor vehicle taxes imposed under the bill are to be distributed to government subdivisions. LB 271, as amended, would amend the manner in which motor vehicles are taxed. The tax would be calculated by multiplying the "base tax" (based on the value of the vehicle when new) by a fraction based on the age of the vehicle. LB 271, as amended, § 4. Your question concerns the recent amendment to Section 3 of the bill, which contains the manner of distribution of the tax. Prior to amendment, subsection (2) of Section 3 provided, in pertinent part:
 After retaining one percent of the motor vehicle tax proceeds collected for costs, the remaining motor vehicle tax proceeds shall be allocated to each taxing unit levying taxes on taxable property in the county in which the motor vehicle has situs in the same proportion that the levy of such taxing unit bears to the total levy on taxable of all taxing units in which the motor vehicle has situs. (emphasis added).
This provision was amended by AM2313 to provide:
 After retaining one percent of the motor vehicle tax proceeds collected for costs, the remaining motor vehicle tax proceeds shall be allocated to each taxing unit levying taxes on taxable property in the tax district in which the motor vehicle has situs in the same proportion that the levy of such taxing unit bears to the total levy on taxable property of all the taxing units in the tax district in which the motor vehicle has situs. (emphasis added).
Your question is whether the substitution of "tax district" for "county" in the amended version of LB 271 is consistent with the language of Neb. Const. art. VIII, § 1(3), which, in addition to providing that "the Legislature may provide for a different method of taxing motor vehicles . . ., states:
 Provided, that such tax proceeds from motor vehicles in each county shall be allocated to the counties, townships, cities, villages, school districts, and other governmental subdivisions of such county in the same proportion that the levy of each bears to the total levy of the county on taxable property; . . . .(emphasis added).
In State ex rel. School Dist. of Scottsbluff v. Ellis,168 Neb. 166, 95 N.W.2d 538 (1959) ["Ellis"], the Nebraska Supreme Court addressed the proper construction of virtually identical language in a prior version of art. VIII, § 1 of the Constitution providing for the allocation of motor vehicle tax proceeds. In 1952, the Nebraska Constitution was amended to allow the Legislature "to provide for a different method of taxing motor vehicles; Provided, that such tax proceeds from motor vehicles taxed in each county shall be allocated to the state, counties, townships, cities, villages, and school districts of such county in the same proportion that the levy of each bears to the total levy of said county on personal tangible property."Id. at 168, 95 N.W.2d at 540. The Legislature, in 1953, enacted a statute (Neb. Rev. Stat. § 77-1240.01 (Supp. 1955)) providing for distribution of motor vehicle taxes as follows:
 The proceeds from such motor vehicle tax in each county shall be allocated to each taxing unit levying taxes on tangible personal property in the county in which the motor vehicle is located in the same proportion that the levy on tangible personal property of such taxing unit bears to the total levy on tangible personal property of all the taxing units in which the motor vehicle is located.
168 Neb. at 169, 95 N.W.2d at 540.
The Scotts Bluff County Treasurer asserted that the distribution provided for under this statute was contrary to the language in art. VIII, § 1. The Plaintiffs, political subdivisions within Scotts Bluff County, asserted the distribution of motor vehicle taxes under the statute was consistent with the language in art. VIII, § 1, and that the statutory distribution method had been uniformly followed in all counties since the statute's enactment. Id. at 169-70,95 N.W.2d at 540.
Addressing the construction of the distribution language contained in the amendment to art. VIII, § 1, the Court inEllis stated:
 The defendant's interpretation of the constitutional provision would require us to say in effect that the levy of a motor vehicle tax was for a county-wide purpose. The allocation of the proceeds of the motor vehicle tax proportionately to the state, counties, townships, cities, villages, and school districts is conclusive that a part of the proceeds were for a county-wide purpose and a part were not. Such a construction would violate the sound principle of taxation which prescribes that the benefits of taxation should be directly received by those directly concerned in bearing the burdens of taxation, so that a Legislature cannot divert taxes raised by one taxing district to the sole use and benefit of another district.
Id. at 172, 95 N.W.2d at 542.
With regard to whether the statutory distribution method complied with the constitutional provision, the Court stated:
 The announced purpose of the legislation providing for the submission of the constitutional amendment to the people was not to change existing allocations of motor vehicle taxes but to provide a different method of taxing them. Motor vehicles had previously been taxed as personal property the same as other tangible personal property was taxed, the taxing units where the motor vehicle was located getting the sole benefit of the revenue therefrom. We interpret the words "the total levy of said county on personal tangible personal property" contained in the constitutional provision to mean the total levy made by the county for all political subdivisions in which a motor vehicle has its taxable situs. We find nothing to indicate an intention to depart from such a distribution. . . . The Legislature by enacting section 77-1240.01, R.S. Supp., 1955, confirmed the generally accepted meaning of the constitutional provision and clarified its meaning by legislative action in a manner not inconsistent with the Constitution and in accord with the fundamental rules of taxation.
Id. at 173, 95 N.W.2d at 542 (emphasis added).
While art. VIII, § 1, has been amended on a number of occasions since the decision in Ellis, the language pertaining to distribution of motor vehicle tax proceeds has remained relatively unchanged. The current language of the constitutional provision, quoted previously, provides for distribution of the tax proceeds from motor vehicle taxes to political subdivisions "in the same proportion that the levy of each bears to the total levy of the county on taxable property; . . . ." The only difference between this portion of the provision, construed inEllis, and the present language is the substitution of the word "the" for "said" before "county", and substitution of "taxable property" for "personal tangible property."
By virtue of the similarity between the language in art. VIII, § 1, construed by the Court in Ellis, and the current language in art. VIII, § 1, we believe the proper construction of art. VIII, § 1, continues to require proportionate distribution of motor vehicle tax proceeds to all taxing subdivisions "in which a motor vehicle has its taxable situs." 168 Neb. at 173, 95 N.W.2d at 542. This interpretation is consistent with subsequent statutory provisions governing distribution of motor vehicle taxes, and the current statute, Neb. Rev. Stat. § 77-1240.01(4) (1996), which provides: "The proceeds from the motor vehicle tax shall be allocated to each taxing unit levying taxes on property in the county in which the motor vehicle has tax situs in the same proportion that the levy on taxable property of such taxing unit bears to the total levy on taxable property of all the taxing units." We note that it is also our understanding that, as was the case in Ellis, it is the practice of all counties to distribute proceeds from the current property tax on motor vehicles to all subdivisions taxing in the tax district where the motor vehicle has situs.
With this background in mind, we turn to your specific question pertaining to the use of the term "tax district" in the distribution language in LB 271. Prior to amendment, the bill required proportionate allocation of motor vehicle tax proceeds "to each taxing unit levying taxes on taxable property in thecounty in which the motor vehicle has situs. . . ." (emphasis added). The bill, as amended, provides for proportionate allocation of motor vehicle tax proceeds "to each taxing unit levying taxes on taxable property in the tax district in which the motor vehicle has situs. . . ." (emphasis added). Your question is whether this change in terminology is permissible, in view of the language in art. VIII, § 1, referring to proportionate distribution of motor vehicle tax proceeds to political subdivisions based "on the levy of each bears to the total levy of the county on taxable property."
In our opinion, we do not believe the change in terminology contained in LB 271, as amended, necessarily results in an inconsistency with the distribution requirement in art. VIII, § 1. This is based on the definition of "taxing district" in LB 270, also presently pending before the Legislature. "Tax district" is defined as "an area within a county in which all of the taxable property is subject to property taxes at the same consolidated property tax rate." The levy for property taxes for each political subdivision levying property taxes on taxable property in the county is made annually by the county board of equalization. Neb. Rev. Stat. §§ 77-1601, 77-1601.01, and77-1601.02 (1996). The apparent intent of the use of the term "tax district" in LB 271, as amended, is to make the language consistent with the definition of that term in LB 270. In effect, however, by defining the term to mean an area in a county in which all taxable property is "subject to the same consolidated property tax rate", the change appears merely to reflect the fact that the county, through the county board of equalization, includes in the levy made annually levies for all political subdivisions in the county which levy property taxes. Defining the term "tax district" in this manner, and employing it in the distribution language in LB 271, as amended, appears to be consistent with art. VIII, § 1, which refers to the "total levy of the county on taxable property"; the "consolidated property tax rate" referred to in LB 270 in defining "tax district" being the equivalent of the "total levy" language employed in the Constitution.
In sum, LB 271, as amended, continues to require distribution of motor vehicle tax proceeds "to each taxing unit levying taxes on taxable property in the tax district in which the motor vehicle has situs", and that the distribution be "in the same proportion that the levy of such taxing unit bears to the total levy on taxable property of all the taxing units in the tax district in which the motor vehicle has situs." This is consistent with the Nebraska Supreme Court's interpretation that art. VIII, § 1 requires proportionate distribution of motor vehicle tax proceeds to all taxing subdivisions "in which a motor vehicle has its taxable situs." Ellis, 168 Neb. at 173,95 N.W.2d at 542. The bill, as amended, continues the situs-based distribution articulated in Ellis. The change in terminology from "county" to "tax district" also appears permissible, in light of the manner in which the term "tax district" is defined in LB 270.
Very truly yours,
 DON STENBERG Attorney General
 L. Jay Bartel Assistant Attorney General
cc: Patrick J. O'Donnell Clerk of the Legislature
APPROVED BY:
DON STENBERG
Attorney General